1

2

3

4

5            UNITED STATES DISTRICT COURT

6            EASTERN DISTRICT OF WASHINGTON

7   MITCHELL D. MISCHENKO,

8                      Plaintiff,              NO:  12-CV-0167-TOR

9        v.                                    ORDER GRANTING DEFENDANT'S
                                               MOTION FOR SUMMARY
10  MICHAEL J. ASTRUE, Commissioner            JUDGMENT
    of Social Security Administration,

11                     Defendant.

12

13        BEFORE THE COURT are the parties' cross motions for summary

14  judgment, ECF Nos. 15 and 17.  The Court has reviewed the administrative record

15  and the parties' completed briefing and is fully informed.  There being no reason to

16  delay a decision, the hearing set for January 31, 2014, is vacated and this matter is

17  submitted without oral argument.

18        Mitchell D. Mischenko seeks judicial review of the Commissioner's final

19  decision denying him Title II Disability Insurance Benefits and Title XVI

20  Supplemental Security Income.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 1

JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under §405(g) is limited: the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 688 F.3d 1144, 1149 (9th Cir. 2012) (citing 42 U.S.C. § 405(g)).  "Substantial evidence" means relevant evidence that "a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether this standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 2

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See Molina v. Astrue*, 674 F.3d at 1110; 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 3

404.1520(a)(4)(i); 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activities, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  *Id.*

At step three, the Commissioner compares the claimant's impairment to several impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does meet or exceed the severity of the enumerated impairments, the Commissioner must pause to make an assessment of the claimant's "residual functional capacity."  Residual functional

1  capacity ("RFC"), defined generally as the most that the claimant can still do in a

2  work setting despite his or her limitations (20 C.F.R. §§ 404.1545(a)(1);

3  416.945(a)(1)), is relevant to both the fourth and fifth steps of the analysis.

4          At step four, the Commissioner considers whether, in view of the claimant's

5  RFC, the claimant is capable of performing work that he or she has performed in

6  the past ("past relevant work").  20 C.F.R. §§ 404.1520(a)(4)(iv);

7  416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the

8  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

9  404.1520(f); 416.920(f).  If the claimant is incapable of performing such work, the

10 analysis proceeds to step five.

11         At step five, the Commissioner considers whether, in view of the claimant's

12 RFC, the claimant is capable of performing other work in the national economy.

13 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

14 the Commissioner must also consider vocational factors such as the claimant's age,

15 education and work experience.  *Id.*  If the claimant is capable of adjusting to other

16 work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

17 404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

18 work, the analysis concludes with a finding that the claimant is disabled and is

19 therefore entitled to benefits.  *Id.*

20         The claimant bears the burden of proof at steps one through four above.

*Molina v. Astrue*, 674 F.3d at 1111; *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

ALJ'S FINDINGS

Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on June 9, 2008 and January 26, 2009 respectively, alleging a disability onset date of November 10, 2008. Tr. 17, 151-62. Plaintiff was 21 years old on his alleged disability onset date. Tr. 69. Plaintiff's applications were denied initially and upon reconsideration. Tr. 75-92, 94-105. He requested a hearing by an administrative law judge (ALJ), Tr. 106-07, and on July 22, 2010, he appeared, accompanied by counsel and testified at the hearing. Tr. 39-67. Thereafter, the ALJ found Plaintiff was not disabled through August 5, 2010, as the ALJ found Plaintiff could perform his past relevant work as a landscape worker as actually and generally performed. Tr. 17, 27. Plaintiff requested review by the Appeals Council contending the ALJ "did not rule in accordance to the weight of the evidence." Tr. 12. The Appeals Council denied

review, Tr. 1-5, making the ALJ's decision the Commissioner's final decision subject to judicial review.

ISSUES

Plaintiff now raises four contentions for review: 1) that the ALJ failed to fully develop the record by obtaining Plaintiff's medical records from the motor vehicle accident in 1998, by failing to inquire whether Plaintiff was enrolled in special education classes prior to the motor vehicle accident, and by failing to order a psychological evaluation (ECF No. 16 at 11-12); 2) that the ALJ improperly discounted the lay witness testimony from Plaintiff's mother and father (*id*. at 12-13); 3) that the ALJ improperly determined Plaintiff's residual functional capacity (*id*. at 14); and 4) that the ALJ failed to call a vocational expert at the hearing to determine steps 4 and 5 (*id.* at 15-16).

The Commissioner contends he supported the final decision in this matter with substantial evidence and it is free of any harmful legal error.

DISCUSSION

**A. Full and Fair Development of the Record**

Plaintiff contends the ALJ failed to fully develop the record by obtaining Plaintiff's medical records from the motor vehicle accident in 1998, by failing to inquire whether Plaintiff was enrolled in special education classes prior to the motor vehicle accident, and by failing to order a psychological evaluation. ECF

No. 16 at 11-12.  The Commissioner contends that all the existing medical records and previous psychological examination in the record contain sufficient information for the ALJ to make an informed decision as to Plaintiff's alleged impairments and functioning without the need to obtain older records or acquire a new consultative psychological examination.  ECF No. 18 at 12-13.

While a claimant ultimately bears the burden of establishing his disability, the ALJ has an affirmative duty to supplement the medical record to the extent it is incomplete.  *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  In Social Security cases the ALJ has a special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.  *Id.* (quotation and citation omitted).  The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's own finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous.  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (*citing Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001)).  When a claimant is not represented by counsel, this responsibility is heightened.  *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003) (citation omitted).  But "even where a claimant is represented by counsel the ALJ has some burden to develop the record, [the Ninth Circuit in *Celaya*] did not specify the parameters of that burden."  *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

1    Here, the record is not ambiguous and the ALJ did not abdicate his

2    responsibility.  It bears noting that when asked at the hearing, Plaintiff's counsel

3    did not seek to supplement the record with any additional medical records.  Tr. 42.

4    Plaintiff's motor vehicle accident occurred in 1998, approximately 10 years before

5    his alleged disability onset date of November 2008.  Here, the record contained

6    more than adequate medical documentation surrounding the relevant time period in

7    question.

8    Substantial evidence in the record supports the ALJ's findings.  The ALJ

9    found Plaintiff had a severe impairment of traumatic brain injury/headaches.  Tr.

10   19.  Plaintiff reported on May 19, 2008, as a new patient at the Rockwood Clinic to

11   discuss headaches.  Tr. 19, 323.  Plaintiff recounted he had chronic headaches

12   since a motor vehicle accident in 1998 when he was 13 years old. Tr. 19, 323.

13   Plaintiff stated he never sought care for his headaches and had been living with

14   them, taking Advil, Tylenol and smoking marijuana to help with pain. Tr. 323.  His

15   physical examination was essentially unremarkable and he was described as alert

16   and cooperative with normal mood and affect and normal attention span and

17   concentration. Tr. 325.  He was assessed with chronic headache.  *Id.*  It was noted

18   the headaches seemed to be more like tension headaches or headaches related to

19   neck pain/head trauma rather than migraines.  *Id.*  He was to start high doses of

20   non-steroidal anti-inflammatory drugs (NSAID) and instructed to stop over-the-

counter medicines except Tylenol.  Significantly in this case, the benefits of

quitting smoking was discussed and he was encouraged to *cease marijuana use*

and *avoid alcohol and caffeine* as these may be exacerbating his headaches.  *Id.*

Plaintiff returned to the Rockwood Clinic on June 6, 2008 and noted

improvement with headache pain with 800 milligrams of ibuprofen.  Tr. 20, 319).

A magnetic resonance imaging (MRI) scan of Plaintiff's brain in December 2008,

revealed left frontal and right periatrial chronic post-traumatic changes but an

otherwise unremarkable scan.  Tr. 20, 330.  It must be noted that Plaintiff

continued to be employed until November 2008.  Tr. 22, 169-170.

Plaintiff was seen by John F. McRae, Ph.D., in April 2009, for a mental

status examination and memory examination.  Tr. 20, 351-353.  Plaintiff alleged

that because of the headaches he had memory problems and could not concentrate

or focus.  Dr. McRae administered several psychological tests.  *Id*.  Dr. McRae

expressed that more likely than not Plaintiff was exaggerating his memory

limitations.  Tr. 353.  Dr. McRae diagnosed Plaintiff with cognitive disorder, not

otherwise specified (NOS) (slowness of processing), dysthymia, and cannabis

abuse.  *Id*.  He reported that it was interesting to note Plaintiff had a fair amount of

experience working at several different jobs lasting months to years and

commented on the fact that he has been able to work and carry out work tasks is

not consistent with his test scores.  *Id.*  In Dr. McRae's judgment, Plaintiff was

1  exaggerating his cognitive limitations.  *Id*.  Dr. McRae also opined that based on

2  Plaintiff's work history, he was able to carry out simple work instructions and

3  tasks.  *Id*.

4        Arvin Klein, M.D., also testified as a medical expert at the hearing in this

5  case.  Tr. 48-51.  After reviewing the medical evidence of record, Dr. Klein

6  testified Plaintiff complained of severe headaches that date back to a motor vehicle

7  accident in 1998 unassociated with any other symptoms.  He testified Plaintiff

8  claims to get relief from smoking marijuana. He  noted the records demonstrated

9  several physical examinations without any positive physical findings. He agreed

10  with the State agency physician, Thomas Coolidge, M.D., who opined Plaintiff did

11  not have any neurological deficits.  Tr. 50, 380-387.  Dr. Klein opined, from a

12  physical standpoint, Plaintiff would be able to maintain full time work on a regular

13  and continuous basis in a competitive work environment.  Tr. 50.

14        The ALJ also received testimony from Ronald M. Klein, Ph.D., a

15  psychological expert.  Tr. 42-48.  After reviewing the evidence of record, Dr. Klein

16  testified that Plaintiff's functional limitations as a result of his psychological

17  disorders were: no limitations with regards to activities of daily living and in social

18  functioning.  However, he would exhibit a mild limitation with regards to

19  maintaining concentration, persistence or pace.  Tr. 46.  He also noted the evidence

20  did not establish the presence of the "C" criteria and therefore lead to his

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11

1   conclusion of no severe mental impairment.  When asked if another consultative

2   evaluation was necessary, Dr. Klein stated Plaintiff's brain injury went back 10

3   years before his alleged onset date so he did not feel additional testing would show

4   any "new or surprising" information. Therefore, he did not advocate for another

5   psychological consultative evaluation.  Tr. 47.  Thus, the ALJ did not err by failing

6   to pursue another consultative evaluation.

7        The ALJ also based his decision on substantial evidence in the record

8   showing that x-rays and MRI scan of Plaintiff's neck and back were normal.

9   Plaintiff demonstrates no neurological deficit, normal sensation and strength in all

10  extremities and only subjective complaints of pain on range of motion testing. The

11  ALJ also noted Plaintiff reported in February 2009, that his neck and back pain had

12  been "that way forever."  Tr. 25, 347.  However, the ALJ noted Plaintiff's was able

13  to work at several jobs over the last several years in the fields of landscaping and

14  construction.  Tr. 25.  The ALJ reasonably concluded "[t]he fact that the

15  impairment did not prevent the claimant from working at that time strongly

16  suggests that it would not currently prevent work." *Id.*

17       Moreover, the ALJ also pointed to Plaintiff's numerous activities to further

18  support his findings.  He noted Plaintiff described daily activities that were not

19  limited to the extent one would expect, given Plaintiff's complaints of disabling

20  symptoms and limitations. Tr. 25.  Plaintiff indicated that he was able to care for

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12

his own personal needs, walk, ride in a car, prepare simple meals, do the laundry, mow the lawn, vacuum, socialize with family, go shopping for food and clothing, watch TV, fish, and play on the computer.  Tr. 23, 25, 191-201.

Finally, there is no reason to believe that whether or not Plaintiff received special education classes prior to high school would have any bearing on his present disability determination.  Plaintiff has not provided any coherent argument on this point and the Court finds the ALJ did not err by not pursuing this issue further.

**B. Consideration of Lay Witness Testimony**

Plaintiff contends the ALJ improperly discounted the lay witness testimony from his mother and father. ECF No. 16 at 12-13.  Plaintiff concedes the ALJ considered the written statements of his mother and father, but contends that he dismissed them because "they were given little weight essentially because as the parents weren't medically trained and could not be considered disinterested."  *Id.* at 13.  He complains that this does not comport with case law but cites to no case law in support of his assertion.  *Id.*

The Ninth Circuit has recently summarized the law on lay witness testimony:

> Lay testimony as to a claimant's symptoms or how an impairment affects the claimant's ability to work is competent evidence that the ALJ must take into account.  We have held that competent lay witness testimony cannot be disregarded without comment and that in order to

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 13

discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness. We have not, however, required the ALJ to discuss every witness's testimony on a[n] individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness.

*Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012) (quotations and citations omitted); *see also Greger v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (holding that an ALJ permissibly rejected the claimant's ex-girlfriend's testimony in part because her "close relationship" with the claimant and "desire to help" him influenced her). Here the ALJ found:

> The statements of the claimant's mother and father were given little weight. The statements do not establish that the claimant is disabled since the witnesses are not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms. Moreover, by virtue of the relationship as claimant's mother and father, the witnesses cannot be considered a disinterested third party witness whose testimony would not tend to be colored by affection for the claimant and a natural tendency to agree with the symptoms and limitations the claimant alleges. Most importantly, significant weight cannot be given to the statements because it, like the claimant's testimony, is simply not consistent with the claimant's activities and preponderance of the opinions and observations by medical doctors in this case and also in light of the evidence that strongly suggests that the claimant has exaggerated symptoms and limitations.

Tr. 26. Nothing more is required by case law. The ALJ committed no error.

///

///

**C. Plaintiff's Residual Functional Capacity and Absence of a VE**

Plaintiff contends the ALJ improperly determined Plaintiff's residual functional capacity (ECF No. 16 at 14) and failed to call a vocational expert at the hearing to determine steps 4 and 5 (*id.* at 15-16). Plaintiff complains that the ALJ did not consider the psychological limitations noted by the DDS records reviewing psychologist. Next, Plaintiff contends that without a vocational expert there was no way to discern the requirements of his past relevant work or possibility of any other work, vis-à-vis both environmental and psychological limitations. *See id.* at 16.

Plaintiff has the burden at step 4 to show that he is incapable of performing his past relevant work. Accordingly, the Commissioner is not required to call a vocational expert at this point in the sequential evaluation process. *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (since claimant failed to show that he was unable to return to his previous job, the burden of proof remained with him and while the vocational expert's testimony was useful, it was not required); *Miller v. Heckler*, 770 F.2d 845, 850 (9th Cir. 1985) (The Secretary is required to produce vocational evidence only when the claimant has shown that he or she cannot perform any previous relevant work.).

The ALJ exhaustively reviewed and recounted all of the medical and "non-medical" evidence submitted. Tr. 19-27. The residual functional capacity

1    determined by the ALJ referenced the findings and opinions of Dr. McRae, Dr.

2    Arvin Klein, Dr. Ronald Klein, and the underlying medical records from treating

3    physicians and clinics.  *Id.*

4            The crux of Plaintiff's argument is that the ALJ allegedly did not include the

5    limitations identified by the Disability Determination Services (DDS) reviewing

6    psychologist, David Sanford, Ph.D.  Tr. 362-79.  Based upon Dr. Sanford's review

7    of the record, he opined Plaintiff would be fairly limited with regards to complex

8    instructions and tasks, however, simple instructions and "simple tasks would not be

9    significantly limited nor would his ability to sustain a regular work routine."  Tr.

10   378.  The Court finds that Dr. Sanford's opinion is not inconsistent with the ALJ's

11   determination that Plaintiff was able to perform the functions of his previous

12   relevant work as a landscape worker.  The ALJ compared claimant's residual

13   functional capacity to the job of landscaper as actually and generally performed,

14   correlated that with the job as found in the Dictionary of Occupational Titles and

15   its specific vocational profile (SVP) and appropriately concluded Plaintiff could

16   perform his past relevant work.

17           Having concluded that Plaintiff was not disabled at step 4, there was no

18   requirement that the ALJ proceed to step 5 and engage the services of a vocational

19   expert.

20

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16

1  The Court determines that substantial evidence in the record supports the

2  ALJ's decision.

3  **ACCORDINGLY, IT IS HEREBY ORDERED:**

4      1.  Plaintiff's Motion for Summary Judgment, ECF No. 15, is **DENIED**.

5      2.  Defendant's Motion for Summary Judgment, ECF No. 17, is

6          **GRANTED**.

7      3.  The hearing set for January 31, 2014, is **VACATED.**

8  The District Court Executive is hereby directed to file this Order, enter

9  Judgment accordingly, furnish copies to counsel, and **CLOSE** this file.

10  **DATED** this 4th day of January, 2013.

11                      *s/ Thomas O. Rice*

12                      THOMAS O. RICE
                        United States District Judge

13

14

15

16

17

18

19

20